**SO ORDERED.**

**SIGNED this 16 day of September, 2020.**



*Austin E Carter*
_____
**Austin E. Carter**
**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Rebecca Gene Holloway and | ) | Case No. 19-52073-aec |
| Christopher Eugene Holloway, | ) | |
| | ) | Chapter 13 |
| Debtors. | ) | |
| | ) | |
| | ) | |
| Rebecca Gene Holloway and | ) | |
| Christopher Eugene Holloway, | ) | |
| | ) | |
| Debtors/Movants, | ) | |
| | ) | |
| v. | ) | Contested Matter |
| | ) | |
| Kenneth C. Colado, | ) | |
| | ) | |
| Respondent. | ) | |

**ORDER ON RESPONDENT'S OBJECTION TO**
**CONFIRMATION OF DEBTORS' MODIFIED PLAN**

Before the Court is the *Objection to Confirmation* of the Debtors' modified Chapter 13 Plan filed by Respondent Kenneth C. Colado ("Mr. Colado") (Doc. 19). Mr. Colado objects to confirmation of the Debtors' proposed modified Chapter 13 plan (the "Plan") (Doc. 27) on the sole ground that the Debtors have no right through this bankruptcy case to modify or affect the terms of the Real Estate

Installment Sales Contract between Mr. Colado and the Debtors, and further that this Court does not have the jurisdiction or authority to modify any party's rights under the Contract.  More specifically, Mr. Colado argues that, because the Debtors defaulted under the Real Estate Installment Sales Contract before the commencement of this case, he should be free to enforce his remedies thereunder to exercise the power of sale and foreclose on the subject real property, which process he had begun when the Debtors filed this case.

At the evidentiary hearing on this matter, held on August 14, 2020, the Debtors were present and represented by counsel.  Mr. Colado appeared on his own behalf.  The Chapter 13 trustee appeared on her own behalf.

This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) and (L).  Under Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 3015(f), Mr. Colado's objection to confirmation is a contested matter governed by Bankruptcy Rule 9014.

Having considered the parties' arguments, the testimony and exhibits introduced at the hearing, and the remainder of the record, the Court states its findings of facts and conclusions of law in accordance with Bankruptcy Rule 7052, made applicable through Bankruptcy Rule 9014(c).

I.    **Findings of Fact.**

In March 2018, the Debtors and Mr. Colado entered into a Real Estate Installment Sales Contract (Debtors' Ex. 1) (the "Contract").   Under the Contract, the Debtors agreed to purchase the real property at 611 Lifsey Springs Road, Pike County, Georgia (the "Property") for $129,900.  The Property was then and continues to be titled in Mr. Colado's name.[1]  The Contract was drafted by Mr. Colado's attorney.

---

[1] Mr. Colado has a mortgage loan on the Property.

The Contract calls for the Debtors to pay $12,900 down, and to pay the balance in monthly installments until a balloon payment of all then-outstanding principal and interest on April 1, 2023. After payment in full, title is to be delivered to the Debtors by delivery of a previously executed Warranty Deed that is held in trust at the office of Mr. Colado's attorney.

The section of the Contract called DEFAULT CLAUSE includes, among other things, a power of sale clause. The DEFAULT CLAUSE of the Contract also provides that the Debtors lose their rights to the Property if they "become bankrupt."

The Debtors have resided in the house on the Property since entering into the Contract; at no time since the execution of the Contract has Mr. Colado had possession. The Debtors have made several improvements to the Property. The Debtors were generally current in their Contract obligations through June 2019, but after that time encountered some difficulties due to Ms. Holloway's unexpectedly losing her employment. Ms. Holloway later obtained a new job, but the Debtors' child stopped receiving social security payments he had previously received.

At some point during 2019, the Debtors defaulted under the Contract. After some failed attempts to work out a consensual resolution of the default, Mr. Colado chose to invoke the power of sale clause under the Contract. When the Debtors filed this case, Mr. Colado was in the process of running a foreclosure advertisement under the Georgia nonjudicial foreclosure laws, O.C.G.A. §§ 44-14-160, *et seq.*, but the foreclosure sale process had not been completed.

The Debtors' Plan proposes monthly payments to Mr. Colado (paragraph 3.1) and also proposes to cure the pre-petition defaults under the Contract by making equal monthly payments until the balloon payment is due under the Contract (paragraph 3.2).

3

Since filing this case, the Debtors have made their required Plan payments. Their income is steady by virtue of the job Ms. Holloway has maintained since August 2019 and Mr. Holloway's social security disability income.[2] Ms. Holloway expects to obtain a judgment in a civil lawsuit within the month or so following the hearing on this matter; she considers that judgment (if and when obtained) collectible. She intends to use any such recovery to help with satisfying the balloon payment under Contract.

## II. Conclusions of Law.

Bankruptcy courts recognize that land installment contracts, such as the Contract, "can either be classified as a security agreement or as an executory contract." *In re Nix*, No. 96-42948, 1997 WL 33419263, at *4 (Bankr. S.D. Ga. Aug. 26, 1997). Based on this recognition, the Debtors' Plan provides alternative treatments for payment to Mr. Colado under the Contract. The Debtors' primary request is to have the Contract treated as a security agreement, with the result that Mr. Colado has as a secured claim in this bankruptcy case. To that end, the Plan provides for monthly payments to Mr. Colado, both for the ongoing Contract obligations and to cover the pre-petition arrearage, as allowed under 11 U.S.C. § 1322.[3]

---

[2] Due to these income sources, the Court finds that the Debtors have "regular income" within the meaning of 11 U.S.C. § 109(e). At a previous hearing, Mr. Colado challenged whether the Debtors meet this eligibility requirement. *See* Doc. 23.

[3] The Debtors' counsel represented at the hearing that under the Plan the Contract arrearages will be caught up "right at" the balloon date of the Contract, but it is not clear from the record whether the maturity date under the Contract occurs before or after the final payment called for under the Plan. This question is immaterial, however, as the Bankruptcy Code authorizes the Debtors to propose to maintain payments under the Contract during the life of the Plan, regardless of whether the Contract maturity date occurs before or after final payment under the Plan. *See* 11 U.S.C. § 1322(b)(5), (c)(2). Likewise, in either case, the Debtors can propose to cure the arrearages under the Contract during the life of the Plan. *See* 11 U.S.C. § 1322(b)(3), (b)(5). *See also* 8 Collier on Bankruptcy P 1322.07 (16th 2020) ("[I]t is now clear that defaults on mortgages that mature or have a balloon payment prior to the conclusion of a chapter 13 plan may be cured under the plan." (citing *In re Lobue*, 189 B.R. 216 (Bankr. S.D. Fla. 1995) and *In re Chang*, 185 B.R. 50 (Bankr. N.D. Ill. 1995))).

4

As an alternative position, the Debtors seek have the Contract treated as an executory contract, which the Debtors would propose to "assume" in its entirety as permitted under 11 U.S.C. §§ 1322(b)(7) and 365.

Mr. Colado argues that the Debtors cannot through this bankruptcy case manipulate or modify any term of the Contract or the parties' respective rights thereunder. He highlights that, under the Contract, he retains title to the Property rather than a mortgage lien as used under the laws of some states. Although not clear from the hearing, the Court gives the benefit of the doubt to Mr. Colado and considers that he also argued that the Debtors' Plan is not feasible due to the balloon payment requirement.

The Chapter 13 trustee agrees with the Debtors that the Contract should be treated as a security deed under Georgia law, and that as a result that Mr. Colado's secured claim may be paid through the Plan. The Chapter 13 trustee recommends the Plan for confirmation.

### A.   The Debtors' Interest Under The Contract

Although not frequently used in Georgia, a land installment agreement such as the Contract is sometimes referred to as a "bond for title." Under this type of instrument:

> While legal title remains in the maker of a bond for title until full payment of the purchase price, such title is retained only as security for such payment and an equitable estate arises in favor of the holder of the bond limited by the amount of his investment. He becomes entitled to full possessory rights in the land and for most purposes becomes the owner of the land as against all persons except the maker of the bond and those claiming under him. When the full price has been paid, he acquires a perfect equity which is the equivalent of a legal title upon which ejectment may be maintained.

*In re Guyton*, 518 B.R. 681, 693 (Bankr. S.D. Ga. 2014) (citation omitted); *see also Adams v. Prescott (In re Prescott)*, 285 B.R. 763, 766 (Bankr. S.D. Ga. 2001) (citation

5

omitted) (under bond for title "an equitable estate arises in favor of the holder of the bond limited by the amount of his investment.").

At the time the Debtors filed this case, Mr. Colado had commenced but had not concluded the foreclosure process under Georgia state law.[4] Therefore, when this case was filed, the Debtors retained their interest in the Property. Such interest in the Property is included in the Debtors' bankruptcy estate, in accordance with 11 U.S.C. § 541. *See Roberts v. Verdi (In re Verdi)*, 244 B.R. 494, 497 (Bankr. M.D. Ga. 2000) (Hershner, J.) (holding that debtor's bankruptcy estate had interest in real property by virtue of bond for title under which seller had not foreclosed at filing of bankruptcy case); *MSE Sub I, LLC v. Louis (In re Louis)*, No. 20-62841, 2020 WL 2843013, at *3-4 (Bankr. N.D. Ga. May 29, 2020) (same); *see also* 11 U.S.C. § 541(a)(1) (property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case."); 11 U.S.C. § 1322(c)(1) (debtor may propose in plan to cure default on purchase of residence so long as no foreclosure sale has been completed). The terms of the Contract do not override the Debtors' equitable interests in the Property. *See Beacham v. Somma Inv., Inc. (In re Beacham)*, No. 05-51927, Adv. No. 05–5109, 2006 WL 565929, at *2 (Bankr. M.D. Ga. Feb. 17, 2006) (Hershner, J.) (forfeiture clause in bond for title did not eclipse debtor's equitable interest in property).

### B. Characterization of Contract Obligations Under the Plan.

As noted, a land installment contract or bond for title is subject to classification as either a security agreement or an executory contract. If a security agreement, the Bankruptcy Code section applicable to the Debtors' proposed Plan treatment is 11 U.S.C. § 1322(b)(3) and (c)(2) (or 11 U.S.C. § 1322(b)(5), as

---

[4] Unlike some bonds for title, the Contract contains a power of sale. The presence of this clause does not change the nature of the Contract, but rather simply allows Mr. Colado to elect a default remedy—nonjudicial foreclosure—that is usually not available to a seller under a bond for title.

explained in footnote 3, *supra*); if an executory contract, the applicable Code section is 11 U.S.C. § 1322(b)(7).

The Eleventh Circuit Court of Appeals looks with approval on bankruptcy courts' use of the "functional approach" to determine how best to make this classification. *In re Nix*, 1997 WL 33419263, at *4 (*citing Sipes v. Atl. Gulf Communities Corp. (In re General Dev. Corp.)*, 84 F.3d 1364, 1375 (11th Cir. 1996)). Under this approach, a bankruptcy court should consider which characterization best serves the interests of the bankruptcy estate. *Id.*; *see also In re Dry Creek Farms, LLC*, No. 09-43118, 2011 WL 9210473, at *2 (Bankr. N.D. Ga. Aug. 30, 2011) ("[T]he [Eleventh Circuit] court adopted a 'functional approach' under which 'the question of whether a contract is executory is determined by the benefits that assumption or rejection would produce for the estate.'").

Here, the Court is persuaded by the application of the "functional approach" to this type of agreement by the bankruptcy court in *In re Curtis*, 500 B.R. 122 (Bankr. N.D. Ala. 2013). In *Curtis*, the court held that subject agreement should be treated as a traditional loan agreement giving rise to a secured claim. The court found that treating the agreement as an executory contract would burden the debtor due to the requirement under 11 U.S.C. § 365 (by virtue of 11 U.S.C. § 1322(b)(7)) that the arrears under the agreement must be cured "promptly," while a debtor has more flexibility under 11 U.S.C. § 1322(b)(3) to cure arrears over the life of his plan. *Id.* at 127. The court also recognized the importance to the estate of the debtor's preserving his residence. *Id.* at 126-27. As for the creditor, the court found that its rights would be protected under this characterization and that, other than allowing for the payment of arrears over time, the creditor would get the benefits of its bargain under the agreement. *Id.* at 129-30.

Application of the functional approach to the Contract yields the same result as in *In re Curtis*—the Court considers the Contract best characterized as a security

7

instrument, giving rise to a borrower/secured lender relationship. This approach allows for the most benefit to the Debtors' estate and its creditors, because the Debtors may preserve their residence through their ability to cure the arrearage over the life of the Plan under 11 U.S.C. § 1322(b)(3) or (b)(5). Treating the Contract as an executory contract would require the Debtors to "promptly" cure the arrearages under 11 U.S.C. § 365(b)(1)(A)—the Debtors' alternate proposal to cure the arrearage over the life of the Plan may not qualify as a "prompt" cure. Therefore, treating the Contract as a security instrument is more appropriate under the approach approved by the Eleventh Circuit.

Congress has seen fit to give a debtor more flexibility to cure arrearages under a secured loan than under an executory contract. The treatment proposed in the Plan for payments on Mr. Colado's claim complies with the Bankruptcy Code, including 11 U.S.C. §§ 1322 and 1325.

And as the court in *Curtis* observed with respect to the secured creditor in that case, here Mr. Colado retains the benefit of his bargain including the Contract's maturity date, although the bargain is modified as to payment of arrearages. *See In re Curtis*, 500 B.R. at 129. Moreover, Mr. Colado retains the right to move for relief from the automatic stay for cause, including failure of the Debtors to perform their obligations under the Plan (or under the Contract as modified by the Plan).[5]

### C.    **Contractual Rights of Private Parties**.

Mr. Colado argues strenuously that the terms of the Contract providing for default upon the filing of a bankruptcy case should remain in full force and effect,

---

[5] Mr. Colado should be careful, however, not to take matters into his own hands if the Debtors default under the Plan. Despite good intentions, a creditor's collection attempts without bankruptcy court approval can subject the creditor to having to pay damages.

8

and that this Court does not have the jurisdiction or authority to modify those rights. The Court disagrees.

Although the United States has a long history of honoring the provisions of agreements entered into by competent adults, that right is not completely unfettered. As has been recently observed by the bankruptcy court in Delaware:

> It has been said many times and many ways. ***[P]repetition agreements purporting to interfere with a debtor's rights under the Bankruptcy Code are not enforceable*** . . . . If any terms in [a private agreement] . . . exist that restrict the right of the debtor parties to file bankruptcy, such terms are not enforceable. [A]ny attempt by a creditor in a private pre-bankruptcy agreement to opt out of the collective consequences of a debtor's future bankruptcy filing is generally unenforceable. The Bankruptcy Code pre-empts the private right to contract around its essential provisions. [I]t would defeat the purpose of the Code to allow parties to provide by contract that the provisions of the Code should not apply. It is a well settled principal that an advance agreement to waive the benefits conferred by the bankruptcy laws is wholly void as against public policy.

*In re Intervention Energy Holdings, LLC*, 553 B.R. 258, 263 (Bankr. D. Del. 2016) (citations and internal quotation marks omitted) (emphasis added).

Similarly, earlier this year the Second Circuit Court of Appeals held: "The Bankruptcy Code generally prohibits enforcement of *ipso facto* clauses—contract clauses that modify or terminate an executory contract due to a debtor's filing of a bankruptcy petition." *Lehman Bros. Special Fin. Inc. v. Branch Banking & Trust Co. (In re Lehman Bros. Holdings Inc.)*, 970 F.3d 91, 98 (2d Cir. 2020) (citing 11 U.S.C. §§ 365(e)(1), 541(c)(1), and 363(l)).[6]

---

[6] Each of the code sections cited in *Lehman Bros.* has relevance in this case. 11 U.S.C. § 365(e)(1) provides that a clause in a contract that allows a party to terminate or modify the contract based on the filing of a bankruptcy case by the other party is not enforceable in a bankruptcy case. 11 U.S.C. § 541(c)(1) provides that the debtor's bankruptcy estate includes any interest of the debtor in property notwithstanding any provision in an agreement triggering a forfeiture, modification, or termination of the debtor's interest in the property. 11 U.S.C. § 363(l), in combination with 11 U.S.C. § 1303, allows a debtor to use property, notwithstanding any provision in a contract that is

9

This principle is rooted in the United States Constitution, which of course authorizes Congress to pass a uniform system of bankruptcy laws. U.S. Const. art. I, § 8, cl. 4 ("The Congress shall have Power . . . To establish . . . uniform Laws on the subject of Bankruptcies throughout the United States."). Therefore,

> absent court approval, private contractual agreements may not over-ride an express provision of the Federal Bankruptcy Code. *See Testa v. Katt*, 330 U.S. 386, 67 S.Ct. 810, 91 L.Ed. 967 (1947) (the U.S. Constitution and the laws passed pursuant to it are the supreme laws of the land); *In re Ann Arbor Brewing Co.*, 110 F.Supp. 111 (E.D.Mich.1951) (since the United States has exclusive jurisdiction under Art. 1, § 8, cl. 4 in bankruptcy matters, provisions of the Bankruptcy Act [Code] are the "supreme law of the land" within the meaning of this clause.)

*In re Flynn*, 143 B.R. 798, 800 (Bankr. D.R.I. 1992).

### D.    **Title to Property.**

Mr. Colado correctly notes that he holds title to the Property rather than a mere mortgage lien. This follows the common practice in Georgia, where lenders usually are granted a security interest in real property for which they loan purchase money, rather than being granted only a lien. *In re Smith*, 514 B.R. 331, 337 (Bankr. S.D. Ga. 2014) (Georgia law provides that title passes from borrower to lender under a deed to secure debt, subject to right of borrower to have property reconveyed on payment of associated obligation). As borrowers, the Debtors have the equitable right of redemption, and acquire title through payment of the amounts owing Mr. Colado. And although several bankruptcy code sections applicable to this case, such as 11 U.S.C. §§ 1322 and 1325, use the term "lien," the Bankruptcy Code's broad definition of the term "lien"—unlike as used under state law—is broad enough to include a lender's title security interest. 11 U.S.C. § 101(37) defines lien as "charge against or interest in property to secure payment of

---

conditioned on the debtor's filing of a bankruptcy case or that gives an option to effect a forfeiture, modification, or termination of the debtor's interest in such property.

10

a debt or performance of an obligation." "[This] bankruptcy definition encompasses both mortgages and deeds to secure debt, also referred to frequently as security deeds." *In re Smith*, 514 B.R. at 334 n.4; *see also* Chapter 13 Prac. And Proc. (June 2020) § 5:4 Existences of lien under nonbankruptcy law, n. 2 ("As used in the Bankruptcy Code, 'lien' includes an interest in real estate to secure a debt regardless of whether the lender has legal title.").

### E. Feasibility.

As this Court has previously held:

> When addressing the feasibility of a plan proposing a balloon payment "[c]ourts consider numerous factors, including the future earning capacity and disposable income of the debtor, whether the plan provides for the payment of interest to the secured creditor over the life of the plan, and 'whether the plan provides for substantial payments to the secured creditor which will significantly reduce the debt and enhance the prospects for refinancing at the end of the plan.'"

*In re Cochran*, 555 B.R. 892, 906 (Bankr. M.D. Ga. 2016) (citations omitted).

Although the Court construes Mr. Colado's arguments to include one of feasibility, Mr. Colado offered no evidence toward this point. The Debtors, on the other hand, offer uncontested evidence of their steady (and sufficient) income and their intended strategy to satisfy the balloon payment. The Court finds this evidence persuasive to carry the Debtors' burden under 11 U.S.C. § 1325(a)(6) and notes also the trustee's report that she considers the Plan feasible.

### III. Conclusion

For the foregoing reasons, the Court hereby OVERRULES Mr. Colado's objection to confirmation of the Debtors' Plan. The trustee is directed to upload a proposed order confirming the Debtor's Plan, consistent with the trustee's report in this case.

[END OF DOCUMENT]